1                    UNITED STATES DISTRICT COURT

2                  DISTRICT OF MASSACHUSETTS (Boston)

3                                No. 1:19-cr-10080-NMG-ALL

4

5

6    UNITED STATES OF AMERICA

7

8    vs.

9

10   DAVID SIDOO, et al

11

12                         * * * * * * * * *

13

14                        For Hearing Before:
                     Magistrate Judge M. Page Kelley

15

16                          Arraignment

17

18                     United States District Court
                     District of Massachusetts (Boston)
                     One Courthouse Way

19                   Boston, Massachusetts 02210
                     Monday, April 29, 2019

20

21                         * * * * * * * *

22

23              REPORTER: RICHARD H. ROMANOW, RPR
                         Official Court Reporter
                      United States District Court

24      One Courthouse Way, Room 5510, Boston, MA 02210
                      bulldog@richromanow.com

25

```
 1                    A P P E A R A N C E S

 2

 3   ERIC M. ROSEN, ESQ.
     JUSTIN D. O'CONNELL, ESQ.
 4   LESLIE WRIGHT, ESQ.
         United States Attorney's Office
 5       J. Joseph Moakley U.S. Courthouse
         1 Courthouse Way, Suite 9200
 6       Boston, Massachusetts 02210
         (617) 748-3100
 7       Email: Eric.rosen@usdoj.gov
         For the United States
 8

 9
     MARTIN G. WEINBERG, ESQ.  (Michael Pabian standing in.)
10       Martin G. Weinberg, P.C.
         20 Park Plaza, Suite 100
11       Boston, MA 02116
         (617) 227-3700
12       Email: Owlmcb@att.net
         For Defendant David Sidoo
13

14
     DAVID M. SCHUMACHER, ESQ.
15       Hooper, Lundy & Bookman, P.C.
         470 Atlantic Avenue, Suite 1201
16       Boston, MA 02210
         (617) 532-2704
17       Email: Dschumacher@health-law.com
         For Defendants Gregory and Amy Colburn
18

19
     BRIAN T. KELLY, ESQ.
20   JOSHUA C.H. SHARP, ESQ.
         Nixon Peabody, LLP
21       100 Summer Street
         Boston, MA 02110
22       (617) 345-1000
         Email: Bkelly@nixonpeabody.com
23       For Defendant Gamal Abdelaziz

24

25
```

```
 1   (Continued.)

 2

 3   DAVID E. MEIER, ESQ.  (Melinda Thompson standing in.)
         Todd & Weld
 4       One Federal Street, 27th Floor
         Boston, MA 02110
 5       (617) 720-2626
         Email: Dmeier@toddweld.com
 6       For Defendants Diane and Todd Blake

 7

 8   REUBEN CAMPER CAHN, ESQ.  (John Littrell standing in.)
         Keller/Anderle, LLP
 9       18300 Von Karman Avenue, Suite 930
         Irvine, CA 92612
10       (949) 476-8700
         Email: Rcahn@kelleranderle.com
11       For Defendant I-Hsin Chen

12

13   WILLIAM J. TRACH, ESQ.
         Latham & Watkins, LLP
14       John Hancock Tower, 27th Floor
         200 Clarendon Street
15       Boston, MA 02116
         (617) 880-4514
16       Email: William.trach@lw.com
         For Defendant Mossimo Giannulli
17

18
     AARON M. KATZ, ESQ.
19       Ropes & Gray, LLP-MA
         Prudential Tower
20       800 Boylston Street
         Boston, MA 02199-3600
21       (617) 951-7117
         Email: Aaron.katz@ropesgray.com
22       For Defendant Elizabeth Henriquez

23

24

25
```

```
 1   (Continued.)

 2
     MELINDA HAAG, ESQ.  (Aaron M. Katz, standing in.)
 3      Orrick, Herrington & Sutcliffe, LLP
        405 Howard Street
 4      San Francisco, CA 94105
        (415) 773-5495
 5      Email: Mhaag@orrick.com
        For Defendant Manuel Henriquez
 6

 7
     BRIEN T. O'CONNOR, ESQ.
 8   JOAN McPHEE, ESQ.
        Ropes & Gray - MA
 9      Prudential Tower
        800 Boylston Street
10      Boston, MA 02199-3600
        (617) 951-7385
11      Email: Bocconnor@ropesgray.com
        For Defendant Douglas Hodge
12

13
     JOHN L. LITTRELL, ESQ.
14      Bienert Katzman, PLC
        903 Calle Amanecer, Suite 350
15      San Clemente, CA 92673
        (949) 369-3700
16      Email: Jlittrell@bienertkatzman.com
     and
17   JONATHAN L. KOTLIER, ESQ.
        Nutter, McClennen & Fish, LLP
18      Seaport West
        155 Seaport Boulevard
19      Boston, MA 02210-2604
        (617) 439-2000
20      Email: Jkotlier@nutter.com
        For Defendant Michelle Janavs
21

22   EOIN P. BEIRNE, ESQ.
        Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C.
23      One Financial Center, 42nd Floor
        Boston, MA 02111
24      (617) 348-1717
        Email: Ebeirne@mintz.com
25      For Defendant Elisabeth Kimmel
```

```
1    (Continued.)

2

3    JACK W. PIROZZOLO, ESQ.
         Sidley Austin, LLP
4        60 State Street, 34th Floor
         Boston, MA 02109
5        (617) 223-0304
         Email: Jpirozzolo@sidley.com
6        For Defendant William McGlashan, Jr.

7

8    MICHAEL K. LOUCKS, ESQ.
         Skadden, Arps, Slate & Flom, LLP
9        500 Boylston Street
         Boston, MA 02116
10       (617) 573-4840
         Email: Michael.loucks@skadden.com
11       For Defendant Marci Palatella

12

13   MICHAEL KENDALL, ESQ.
         White & Case, LLP
14       75 State Street
         Boston, MA 02109
15       (617) 939-9310
         Email: Michael.kendall@whitecase.com
16       For Defendant John Wilson

17

18   TRACY A. MINER, ESQ.
         Miner Orkand Siddall, LLP
19       470 Atlantic Ave, 4th Floor
         Boston, MA 02210
20       (617) 273-8421
         Email: Tminer@mosllp.com
21       For Defendant Homayoun Zadeh

22

23

24

25
```

1    (Continued.)

2

3    NICHOLAS C. THEODOROU, ESQ.
        Foley Hoag, LLP
4        155 Seaport Boulevard
        Seaport World Trade Center West
5        Boston, MA 02210
        (617) 832-1163
6        Email: Ntheodorou@foleyhoag.com
        For Defendant Robert Zangrillo

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
1                    P R O C E E D I N G S

2                    (Begins, 10:40 a.m.)

3                    THE CLERK:  Today is Monday, April 29th, 2019,

4     and we are on the record in Criminal Case Number

5     19-10080, the United States versus David Sidoo, et al.

6     Would counsel please identify themselves for the record.

7                    MR. ROSEN:  Good morning, your Honor, Eric

8     Rosen, Leslie Wright, and Justin O'Connell for the

9     government.

10                   THE COURT:  Good morning.

11                   MR. SCHUMACHER:  Should I go first, your

12    Honor?  Good morning, your Honor, David Schumacher for

13    Defendants Amy Colburn and Gregory Colburn.

14                   THE COURT:  Good morning.

15                   MR. BEIRNE:  Good morning, your Honor, Eoin

16    Beirne for Defendant Elisabeth Kimmel.

17                   THE COURT:  Good morning.

18                   MR. LOUCKS:  Good morning, your Honor, Michael

19    Loucks for Marci Palatella.

20                   THE COURT:  Good morning.

21                   MS. MINER:  Good morning, your Honor, Tracy

22    Miner for Homayoun Zadeh.

23                   THE COURT:  Good morning.

24                   MR. THEODOROU:  Good morning, your Honor,

25    Nicholas Theodorou for Robert Zangrillo.
```

```
1              THE COURT:  Good morning.
2              MR. PIROZZOLO:  Good morning, your Honor, Jack
3    Pirozzolo for William McGlashan.
4              THE COURT:  Good morning.
5              MR. O'CONNOR:  Good morning, your Honor, Brien
6    O'Connor and Joan McPhee for Doug Hodge.
7              THE COURT:  Good morning.
8              MS. THOMPSON:  Good morning, your Honor, I'm
9    Melinda Thompson for Diane and Todd Blake.
10             THE COURT:  Good morning.
11             MR. TRACH:  William Trach for Mossimo
12   Giannulli, your Honor.
13             THE COURT:  Good morning.
14             MR. KOTLIER:  Jonathan Kotlier and John
15   Littrell for defendant Michelle Janavs.
16             THE COURT:  Good morning.
17             MR. LATTRELL:  Good morning, your Honor, John
18   Lattrell specially appearing for Reuben Cahn for I-Hsin
19   Chen.
20             THE COURT:  Okay, good morning to you.
21             MR. KATZ:  Good morning, your Honor, Aaron
22   Katz for Elizabeth Henriquez and specially standing in
23   for Manuel Henriquez.
24             THE COURT:  Okay, good morning.
25             MR. PABIAN:  Michael Pabian standing in for
```

1  Martin Weinberg of behalf of David Sidoo.

2           THE COURT:  Good morning.

3           MR. KENDALL:  Good morning, Mike Kendall for

4  John Wilson.

5           THE COURT:  Good morning.

6           MR. KELLY:  Good morning, Brian Kelly, Joshua

7  Sharp on behalf of Defendant Gamal Abdelaziz.

8           THE COURT:  Good morning.  Wow.  Okay, that's

9  everyone.

10      Okay.  So good morning again and, um, you know the

11 rule doesn't quite say how we do an arraignment in the

12 absence of a defendant and, um, I'm inclined to just not

13 verbally go through the arraignment with counsel and

14 have you enter a plan on your client's behalf, but if

15 anyone wants us to do that, um, 19 times, we're happy to

16 do that.  I don't know if anyone has an opinion about

17 that.

18      So I think we will just consider this to be an

19 arraignment.  I have allowed each of the defendants to

20 waive their appearance.  I'm going to consider that

21 counsel has entered a plea of not guilty on behalf of

22 their client here on the second superseding indictment,

23 which was filed on April 9th, 2019.  Hearing no

24 objection to that.

25      So the initial status conference is set for June

1    3rd at 11:00 a.m.  And I think given the issues that

2    we've had with the protective order and discovery, that

3    that's a pretty quick date.  I'm not quite sure what

4    counsel will be able to do with the discovery between

5    now and then.  But I'm still inclined to keep that date

6    just because I think it's, um -- everyone has notice of

7    it, if things arise in the meantime, close enough to

8    that date, we can just handle them at that time, and so

9    I'm going to keep that date on the calendar.

10        So I know that, um, some of you are already

11   appearing on behalf of multiple defendants and on behalf

12   of other attorneys, I'm happy for that to happen at the

13   status conferences.  I would prefer that local counsel

14   appear, if someone's going to appear, and not have

15   someone else cover for them.  And if I think some

16   counsel -- I think one defendant does not have local

17   counsel, their counsel may appear by phone if they wish

18   to.

19        My hesitance -- I'm hesitant to allow a lot of

20   people to appear by phone at once because in my

21   experience you can't really understand people and

22   they're interrupting each other and you can run into

23   problems with that.  So I prefer not to have people

24   appear by phone unless you have to, but obviously that's

25   an option for people.

1      So, um, if there's no objection I'm going to --

2  because we gave counsel quite a bit of leeway in filing

3  the waivers, I'm going to exclude the time from the date

4  of the indictment until the initial status conference of

5  June 3rd, and I note the local rule excludes that time

6  anyway.  But I'm going to also do it in the interests of

7  justice given the problems we've had with discovery.

8      So first I'd like to take up the motion for the

9  protective order.  Just for housekeeping purposes, the

10  government filed a motion, Number 317, and I think,

11  unless the government objects, I'm going to deny that as

12  moot given the subsequent things that have happened.

13  Also Attorney Weinberg filed a Number 323, a motion for

14  an addendum, and I'm going to deny that as moot because

15  I note that he then joined in the later motion.

16      So with regard to, um, Number 366, which is a

17  motion for a protective order -- and Exhibit 1 I'm going

18  to assume is agreed to by all defendants.

19      Are there any defendants who want to tweak that or

20  disagree with what it's asking for?  Yes.

21          MR. BEIRNE:  Your Honor --

22          THE COURT:  And just for the purpose of the

23  record, since there's so many people, if you could just

24  identify yourself when you speak, please.

25          MR. BEIRNE:  Thank you, your Honor.  Eoin

1    Beirne for Elisabeth Kimmel.

2         I represent that the second protective order that

3    was filed was the exhibit to the motion that was filed

4    on Friday.  Almost all defendants joined in that motion.

5    I can represent now that all defendants do join today in

6    request that the Court handle that second proposed

7    protective order.  We did all agree with the version

8    attached to the joint status report, but we weren't able

9    to come to agreement with the government about all of

10   the provisions, so we do request that that second

11   protective order be the one that the Court enters.

12            THE COURT:  Okay, and so why don't I hear the

13   government on the parts of that order, which is Exhibit

14   1 to 366, that you do not agree to?

15            MR. ROSEN:  Judge, first of all, I want to

16   thank Eoin Beirne for being very flexible, we arrived at

17   a pretty solid agreement, a protective order that I

18   think addresses all the needs in terms of allowing each

19   defendant within this case and the Ernst case to

20   adequately prepare for trial and to, um, confront any

21   potential witnesses and share discovery amongst both

22   themselves and the defendants.  I think that's set forth

23   in the first protective order, the one filed, I believe,

24   in 365.

25         I first want to note, Judge, in sort of opposing

1    that paragraph, is that I understand that these

2    defendants are in one case, there's a bunch of coaches

3    in the second case before Judge Talwani, and, you know,

4    the first point is just symmetry between the protective

5    orders.  It's the same discovery largely, though I give

6    little tweaks and bobs amongst it, but largely it's the

7    same, and it would be very difficult to enforce two

8    slightly-different protective orders amongst the two

9    cases considering that discovery is largely the same.

10        This protective order here is needed, um, this is

11   -- the discovery here is different from really any other

12   case I've litigated, um, primarily because it contains

13   highly confidential information both in terms of

14   obviously financial records, e-mails, wiretap

15   recordings, consensual recordings and the like, but it

16   also involves people's children, and I think we can all

17   agree that that should be kept at -- that should be at

18   least tightly controlled.  People with children, for

19   example, not just in academic records, but also in

20   health records, mental health records, and essays that

21   people -- that kids have written for colleges, some of

22   which contain, um, details of abuse, details of parents

23   living after divorce, things like that, that, um, we

24   believe is properly subject to a protective order.  And

25   I think the defendants probably would agree to that as

1   well.  As I said, the protective order, I think, allows

2   for proper dissemination within the defense team within

3   the defendants.

4        I think -- the problem which I think the

5   government has is that the addendum, the one paragraph

6   that they've chosen, would undermine the protections

7   afforded by that, um, protective order because of how

8   this case is charged.  It's a conspiracy.  All the

9   defendants are charged as -- it's a "hub" technically,

10  it's called a "hub and spoke conspiracy," but the

11  evidence is related to each one of them and not just to

12  amongst themselves.

13       So when we ask about, you know, carving out a

14  provision that allows for dissemination for any action

15  taken by an alleged co-conspirator with respect to the

16  defendant or any of the defendants' family members, the

17  government's answer really is "All of the actions taken

18  by co-conspirators relate to the defendant."  It would

19  essentially undercut and eviscerate the protective order

20  that's, um, that's been agreed to.

21       Now I can understand if there was some underlying

22  need for this provision, but there is none.  It's not

23  articulated at all in defendants' motion, it just says

24  "So we can use the materials as they see fit."  Is that

25  for other litigation?  Is that for, you know, litigation

1    with schools?  I don't know.  The point is that the

2    evidence that the government provides are government

3    discovery materials, it doesn't apply to any materials

4    that they can't obtain on their own, but the government

5    discovery materials should be used for the case at large

6    and not used simply as they see fit.  I think the

7    paragraph is too broad, it eviscerates the protective

8    order, and for that reason I ask your Honor to deny the

9    proposed addendum.

10            THE COURT:  So if I could just ask you, with

11   regard to that phrase, the way I read -- well, first of

12   all, just to back up a minute.

13       I understand this is a conspiracy but I think more

14   so than in other conspiracies many of these

15   co-conspirators are limited in their contact with one

16   another.  So, for example, I know there are some parents

17   who had contact with each other, but in general I think

18   this is a conspiracy where the parents are having

19   contact with Mr. Singer and his agent and very

20   particular people at a certain school and no one else.

21   So I mean I understand the government's theory of the

22   conspiracy, but I do think, um, the spokes -- not to get

23   into the metaphor of the wheel, but the spokes are quite

24   isolated from the other spokes by and large.

25            So with that in mind, the way I read this is, um,

1    the primary materials are defined:  "With respect to

2    each individual defendant, of any discovery materials

3    that relate to any action taken by an alleged

4    con-conspirator with respect to the defendant or the

5    defendant's family members."  And so, for example, the

6    alleged co-conspirator might be Mr. Singer who, the

7    actions that he -- the discovery that relates to his

8    communications with the parents would then sort of be

9    owned by that parent and that it would not be under a

10   protective order.

11       And what I'm concerned about here is just

12   comparing this to a regular case where, if one had been

13   charged by oneself, there wouldn't be any of this,

14   because it's one's own child.  You know I think that the

15   fear here is that one parent is going to out another

16   parent's child in using the discovery in a way that's,

17   um, I think we all agree we don't want to see happen.

18        So if in fact it's just the co-conspirators

19   actions with regard to that parent or the parent's child

20   and we adhere to that very strictly, does --

21       Yes?

22           MR. ROSEN:  If I could, your Honor?  Without

23   addressing this sort of, you know, the interaction

24   between the different spokes, um, one of the issues

25   here, for example -- and let me just give you the

1    example of the University of Southern California, or

2    USC, there are multiple e-mails between Singer and

3    Dr. Heinal, another co-conspirator that's referenced not

4    only, um -- they reference more than one child, so they

5    made a list of 10 childs -- 10 children.  Some of the

6    parents that have been indicted here have pled guilty --

7    or will plead guilty, but others have not.  So it would

8    effectively out them as people who benefited from an

9    athletic admissions system without giving them any

10   opportunity to defend themselves.

11          What I would suggest, if your Honor is so

12   inclined, I think that the defense -- once they've

13   reviewed the discovery and see how sort of interwoven it

14   is amongst themselves, maybe they can then come back to

15   the Court and provide a carve-out maybe for just

16   materials that only reference them or their children, I

17   think that would be more amenable.  But the problem is

18   if it's any action taken by a co-conspirator it reflects

19   many kids, some of them won't have the opportunity to

20   defend themselves, and some of whom haven't been

21   publicly outed by anyone as being beneficiaries of a

22   scheme or who are not beneficiaries of a scheme.  There

23   are a lot of kids who, sort of at the beginning, or

24   parents who at the beginning, you know, plotted the

25   Singer events but sort of withdrew for a variety of

1    reasons.  So it would unfairly impact a lot of those

2    children and parents.

3              THE COURT:  So I don't know how to deal with

4    so many defense counsel at once, but what if we altered

5    this to say, um, with respect to the defendant -- solely

6    with respect to the defendant or the defendant's family

7    members, and you could use materials that do not solely

8    reference you if you redacted them?  I'm seeing some

9    nods.

10             Yes?

11             MR. BEIRNE:  Your Honor, I think that does

12   sound reasonable.  I will -- just responding to

13   Mr. Rosen, I will say there's a mechanism built into

14   this suggested paragraph that deals with exactly the

15   issue that Mr. Rosen raised, and we are, as you noted,

16   all concerned with the privacy of our own materials and

17   we don't want anyone but the parents or the defendant to

18   whom this stuff relates have any ability to disseminate

19   it or use it beyond the strict controls of the

20   protective order.

21        In the event that there are communications such as

22   the one Mr. Rosen referenced -- and again we haven't

23   seen any of this stuff yet, um, there is a mechanism

24   here for Mr. Rosen and the government to designate

25   materials that they think, while perhaps meeting the

1  definition of "primary materials," should remain subject

2  to the protective order, and then -- and then we have

3  the right to challenge it.  But it is self-effectuating

4  that if he designates it, it is subject to the

5  protective order.

6        THE COURT:  My only concern -- I think that's

7  a point well-taken, but my only concern with that is

8  putting the burden on the government to protect your

9  client's children, and if something slips through or if

10  someone misconstrues this, and then it's the

11  government's fault that someone has used it when really

12  the harm is going to be towards the kids.

13        So could I ask that you go back to the drawing

14  board on this paragraph, and I know it's a lot of

15  parents -- excuse me, a lot of defendants involved, but

16  let's try within the next 48 hours to circulate --

17  Mr. Rosen, I'll let you draft, um, that, and let's just

18  try to put, um -- "that relate to any action taken by an

19  alleged co-conspirator solely with respect to the

20  defendant," and, um, otherwise redact it.  And I mean I

21  wonder if it would make sense once say you get the

22  discovery and you want your discovery to be, um,

23  considered primary -- certain discovery to be "primary

24  materials" for your defendant, that you simply, um,

25  decide what those are, notify the government, and give

1     the government a certain period of time to disagree with

2     you, because I think that would allow each defendant to

3     make sure their interests are protected and not put the

4     whole burden of that on the government.

5              MR. BEIRNE:  Your Honor, if you might give

6     defense counsel sort of on that, you know, 2 minutes to

7     talk, I would bet we could come to an agreement and then

8     perhaps the Court, um, could enter an order.  We can

9     supply it this afternoon.  So as not to delay discovery

10    any further.

11             THE COURT:  Great.

12             MR. ROSEN:  It's not going to delay discovery.

13    I mean we have to -- I don't think like two days would

14    delay discovery.  Discovery -- the clock starts today

15    with the arraignment.  So nothing's going to delay it,

16    your Honor.

17             THE COURT:  So why don't we do this.  After

18    this hearing I'll ask defense counsel to stay for a few

19    minutes, figure out what you can agree to, and then

20    designate someone of you to negotiate with Mr. Rosen and

21    circulate something, and we'll just all agree you're

22    going to get back immediately if you can.  Because the

23    sooner you get back to the government, the sooner I'll

24    enter the order, et cetera.

25             MR. BEIRNE:  Thank you, your Honor.

1          THE COURT:  And I also would just say I know

2     these protective -- you have to be very cautious about

3     the wording of these protective orders, but I think we

4     can all agree here that with the sensitive information

5     that's going to be released about the children involved

6     in this litigation and not involved in this litigation,

7     it's in everyone's interest to protect that information

8     about other people's children.  And so I would just urge

9     all defense counsel to be very very cautious in your

10    filings and in your dissemination of the materials.

11    Once the primary materials click in for each defendant

12    and they belong to you and you can use them, I do think

13    it's really on you to make sure you're not disseminating

14    information -- you know personal information about other

15    people's children, right?  And I'm seeing a lot of nods.

16         Okay, so I this is doable and, um, it has worked

17    out very well.  And I'll sign whatever you agree to.

18    Although I do have a question.  And on the last page,

19    Page 4, it says "Further ordered, discovery materials

20    falling within the following categories shall be filed

21    with the Court for the purposes of litigation under

22    seal," and it says "this does not apply to information

23    in legal briefs or memoranda."  And I'm just not sure

24    what that means.

25         Yes?

```
1            MR. ROSEN:  It was referring, sorry, to the

2      part of the negotiation, I think more with the, um, the

3      Ernst, um, group of defendants.  It really just maybe

4      didn't have to -- the redaction issues still apply, we

5      still have to redact out names and things like that.

6      But we no longer -- we didn't want to -- we wanted to

7      make it clear that the briefing itself, which could

8      contain information derived from the discovery

9      materials, doesn't have to be filed under seal.

10            THE COURT:  Okay, so but you're still -- okay,

11      but it says "It shall be filed with the Court, for the

12      purposes of litigation, under seal, any reference to a

13      child."  I mean --

14            MR. ROSEN:  The actual discovery material.

15            THE COURT:  I see.

16            MR. ROSEN:  Like if you're attaching say to

17      your brief Exhibits 8 through 12 e-mails and things like

18      that, that must be filed under seal.  But the brief

19      itself is just -- you know so that there is obviously

20      disclosure, we're not doing this all under seal, it

21      would not be filed under seal.  I believe -- and maybe

22      it's poorly worded, I'm sure we could change it, but

23      that obviously -- that any information about particular

24      children, particularly those, you know, not named, would

25      be, you know, either redacted in some way or, um, you
```

1    know we could file, you know, it sort of blacked out and

2    then we could file another brief, you know, under seal

3    containing the information.

4              THE COURT:  Okay.  And I think I would just

5    say to this, um, obviously the goal is to file as little

6    under seal as possible because we do want to keep the

7    proceedings public, so perhaps, um, if things could be

8    redacted rather than filed under seal, that's great.

9    But if you're attaching whole portions of the discovery

10   materials to some filing for some reason, then you can

11   certainly try to file them under seal.  But let's use

12   the use of filing things under seal judiciously because

13   I do think it's, um -- you don't want things just

14   wholesale under seal unless they have to be, right?

15   Okay.

16         Okay.  So I'll just wait for, um, a final

17   protective order to be filed.

18         And so just to ask the government, how does 30

19   days sound for the provision of the discovery now?

20              MR. ROSEN:  It's definitely doable, your

21   Honor.  We will, um -- I mean I was hoping to do it

22   sooner actually.  It sort of depends on the, um, we're

23   just reproducing some of the hard drive that we've

24   passed out to prior --

25              THE COURT:  Okay, so we'll say, um, May 30th

1   is the new discovery deadline.  And if the government

2   can produce even partial discovery before that,

3   obviously that would be great, whatever you're able to

4   produce.

5               MR. ROSEN:  We will, your Honor.

6               THE COURT:  Okay.  So we also --

7          Anything else about that from anyone?

8               MR. BEIRNE:  No, your Honor.  Thank you.

9               THE COURT:  Okay, I'll just take that as a

10  collective "No."

11         Okay.  So then we also have, um, the motion to

12  suspend discovery practice.  And I'll just say I'm

13  really disinclined to do this.  I certainly understand

14  why Mr. Schumacher filed his motion when he did.  I also

15  understand that other, um, litigants may wish to examine

16  their discovery before joining in that motion or filing

17  one of their own.

18         And I'm just wondering, Mr. Schumacher, if you

19  would like to perhaps withdraw your motion?  You don't

20  have to say this now, but withdraw your motion without

21  prejudice to refiling and that would kind of, um, reset

22  the clock on that, and then after the discovery, maybe

23  on June 3rd, we'll see how much time do people want to

24  review the discovery and set a, um, a schedule for that.

25  But that's completely up to you.

1          MR. SCHUMACHER:  Understood, your Honor.  I'm

2    disinclined to do that, respectfully, your Honor, of

3    course this is a delicate line to walk and there's a

4    number of interests that we're trying to balance, and

5    that's why we didn't take a position, one way or the

6    other, on the other defendants' motion.  But we're not

7    inclined to withdraw, but of course we understand the

8    gravamen of the motion for the defendants.  And if your

9    Honor's inclined to suspend, um, ruling on our motion,

10   then of course we would understand that and abide by it.

11   But I think we're not inclined to withdraw the motion at

12   this time.

13          THE COURT:  Okay.  So it will need to go up to

14   the District Court for a decision, that's not something

15   I would rule on.

16       So when is or was the government's response due?

17          MR. ROSEN:  It would be due today, your Honor,

18   so if we could just suspend that until after the

19   District Court rules, it would be much appreciated.

20          THE COURT:  So the District Court rules on

21   what?

22          MR. ROSEN:  If you state it has to go up to

23   the District Court.

24          THE COURT:  Sure.  I mean typically what would

25   happen in -- before me is someone files a motion to

1   dismiss and I would set a schedule for the opposition

2   and the reply, I mean it's ripe, it goes up to the

3   District Court for a date.

4           MR. ROSEN:  Right.

5           THE COURT:  So, um -- I can't dismiss a

6   criminal case, I don't have that authority.

7           MR. SCHUMACHER:  That's fine, your Honor.  I

8   was under the impression that under the local rules,

9   just as Mr. Rosen said, 14 days to respond, we

10  understood that the response was due today.  We

11  understand that there's this other motion out there that

12  could affect how that motion is resolved, but I'm not

13  frankly certain what impact the other motion has on

14  their opposition to our motion to dismiss.

15          THE COURT:  Okay, you're talking about the

16  motion to suspend?

17          MR. SCHUMACHER:  Correct.

18          THE COURT:  Yeah.  All right.

19      So I'm happy to suspend the deadline for your

20  opposition and then that would effectively delay your

21  motion being sent up.  So why don't I give you 90 days

22  to file your opposition, and we can revisit that.

23          MR. ROSEN:  Thank you.

24          THE COURT:  Okay.

25      Is that all right with you?

1     MR. SCHUMACHER:  Understood, your Honor, yes.

2     THE COURT:  Okay.

3   All right.  So anything else we need to do today?

4     (Silence.)

5     MR. ROSEN:  Nothing from the government.

6     THE COURT:  No.  All right.  So thank you all

7 very much and we'll see you June 3rd.

8     THE CLERK:  The Court's in recess.

9     (Ends, 11:00 a.m.)

1                    C E R T I F I C A T E

2

3          I, RICHARD H. ROMANOW, OFFICIAL COURT REPORTER,

4    do hereby certify that the foregoing record is a true

5    and accurate transcription of my stenographic notes,

6    before Magistrate Judge M. Page Kelley, on Monday, April

7    29, 2019, to the best of my skill and ability.

8

9

10
     /s/ Richard H. Romanow 05-01-19
11   _____
     RICHARD H. ROMANOW   Date
12

13

14

15

16

17

18

19

20

21

22

23

24

25