UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>DAVID SIDOO, *et al.*,<br><br>　　　　　　Defendants. | Crim. No. 19-cr-10080-NMG |

DEFENDANT ELISABETH KIMMEL'S RESPONSE TO THE GOVERNMENT'S
MEMORANDUM REGARDING TRIAL GROUPINGS

Pursuant to the Court's December 23, 2019 Order (ECF No. 705), Defendant Elisabeth Kimmel, by and through her counsel, submits this response to the government's Memorandum Regarding Trial Groupings (ECF No. 799).

In its Order, the Court directed the government to propose how the defendants may be grouped if it becomes necessary to have multiple trials in this matter, and to assist the Court in setting trial dates. In response, the government provided two proposals, one consisting of two trials of seven and eight defendants, respectively, and the other consisting of three trials of five defendants each. Both of the government's grouping proposals lack any coherent organizing principle and will result in highly prejudicial and inefficient trials for all defendants and the Court. Moreover, the government requests that under either proposal, the first trial begin in October 2020, despite the fact that the government has produced and continues to produce an overwhelming volume of discovery that requires substantial time for the defendants to review, and the parties have yet to brief and present to the Court substantial Rule 12(b) and Rule 14 motions that could impact the structure of the prosecution.

1

The Court should reject the government's proposal for at least four reasons. First, the government's proposal will result in highly inefficient trials that each trial presents varying and unrelated fact patterns and charges, eliminating any possibility of judicial efficiency, and requiring constant instructions to the jury that are unlikely to adequately address the prejudicial effect of such disparate evidence to be presented against each individual in each joint trial. Second, the absence of virtually any shared evidence among defendants in each trial will increase the motion practice necessary in order for the defendants to protect themselves against the unfair prejudice resulting from being tried with individuals whose conduct is unrelated to their conduct. Third, this absence of any commonality substantially increases the likelihood that each defendant's constitutional right to a fair trial will be infringed by unrelated prejudicial evidence, thereby greatly increasing the likelihood of prejudicial error.

Finally, the government's proposal ignores the harsh reality of the discovery process in this case. The government has to date produced over 3.2 million pages and continues to produce materials to the defendants, including producing over 44,000 pages at the end of January, and has continued to challenge the defendants' requests for basic exculpatory evidence. These issues are the subject of ongoing dialogue and motion practice. Given the stage and volume of discovery, the government's proposal that the first trial begin in October 2020 is unreasonable and uniquely prejudicial to the defendants selected by the government to be in the first trial.

Moreover, in light of the ongoing productions and the pending motion practice, coupled with the government's practice in this prosecution of adding additional charges against those defendants who wish to exercise their constitutional right to a trial by jury, it is premature to engage in any conclusive analysis regarding how the defendants should be grouped. The landscape of this prosecution is continuously shifting, discovery is ongoing, Rule 12(b) and 14 motions have not yet

been filed, and without a sufficient overview of the case or key evidence that would enable counsel to properly evaluate the proposed defendant groupings, counsel for Mrs. Kimmel (or any other defendant) cannot meaningfully respond to the government's proposed groupings. Until the defendants have the entirety of the discovery in this case, and fundamental challenges to the Indictment as well as severance issues have been resolved, the defendants are unable to conduct a reasoned analysis of all the facts and determine where prejudice is so substantial as to be incurable in a joint trial. The prematurity of this exercise also frustrates the Court's intentions of coordinating counsel's schedules and ensuring an orderly, predictable trial schedule, and may ultimately render this grouping process a futile effort.

Despite these limitations, counsel for the defendants have made their best efforts to comply with the spirit of the Court's Order, and offer some guiding principles for grouping defendants, along with a proposal to minimize the inherent and unfair prejudice many of the defendants will face in a joint trial regardless of whom they are tried with. Counsel for Mrs. Kimmel respectfully submits that any trial groupings should be based tentatively upon the distinct categories of conduct alleged in the Fourth Superseding Indictment (the "Indictment") (ECF No. 732). Mrs. Kimmel proposes that the groupings for trial use these categories as an organizing principle, as discussed more fully below.

In making this submission, Mrs. Kimmel reserves all rights and intends to raise challenges to the Indictment and to seek further severance, consistent with the Court's scheduling orders and the Federal Rules of Criminal Procedure.

<u>Relevant Background</u>

At this time, fifteen defendants plan to exercise their constitutional right to a trial by jury. The Indictment charges those fifteen defendants with conspiring to commit bribery, fraud, and

money laundering; see Indictment ¶¶ 369-70, 373-74; eleven of the defendants with conspiring to commit federal programs bribery, *id.* ¶¶ 371-72; one of the defendants with substantive counts of bribery and fraud; *id.* ¶¶ 375-76; and one defendant with a substantive count of federal programs bribery, *id.* ¶¶ 377-78, and filing a false tax return, *id.* ¶¶ 379-80; *see* Appendix A.[1]

The allegations in the Indictment masquerade as a hub and spoke conspiracy.[2] The Indictment merges many distinct relationships into a single, general "conspiracy," with at least three distinct categories of allegedly unlawful objectives—test-taking, class-taking, and donations—into a single conspiratorial goal. Some defendants are alleged to have defrauded solely the University of Southern California ("USC") by making "corrupt" donations to help secure the admission of their children; other defendants allegedly defrauded or intended to defraud different universities. One defendant is alleged to have had a third party take classes in place of the defendant's child, with the understanding that grades earned in those classes would be submitted as part of the student's college applications. Still other defendants, by contrast, are alleged to have defrauded testing companies. Mrs. Kimmel is alleged to have made donations to USC and another university, but has no alleged involvement in the purported test-taking or class-taking objectives.

With such disparate alleged conduct by the defendants, Mrs. Kimmel contests the existence of any conspiracy between the charged parents in this case and believes that the government's charging decision is improper. The defendants intend to file motions to dismiss or in the alternative

---

[1] The government's memorandum claims that four defendants have been charged with substantive counts of federal programs bribery, see ECF No. 799 at 1, but the Indictment charges only one defendant with that offense. *See* Indictment ¶¶ 377-78; *see also* Appendix A (attached hereto).

[2] Mrs. Kimmel and other defendants intend to move to dismiss the Indictment on this and other grounds, including that the Indictment is duplicitous under Fed. R. Crim. P. 12(b)(3)(B)(i), that it fails to state an offense under Fed. R. Crim. P. 12(b)(3)(B)(v), and that it improperly joins claims and defendants under Fed. R. Crim. P. 12(b)(3)(B)(iv). Such charging decisions, and corresponding joint trials, are impermissible under *Kotteakos v. United States*, 328 U.S. 750, 775 (1946).

to sever pursuant to Federal Rules of Criminal Procedure 8 and 12 on this and other bases. This proposal, submitted in response to the Court's Order, should not be viewed as a waiver of Mrs. Kimmel's legal rights to contest that there is neither a single conspiracy nor a proper joinder, or to raise other challenges to the Indictment.

Equally significant, the conspiracy charges in the Indictment do not describe any instance in which any two parent defendants, other than perhaps married couples, engaged in a series of acts or transactions with each other. The Indictment also includes additional counts levied against individual defendants whose conduct has no connection to that of the other defendants, such as a charge for filing a false tax return against only one of the fifteen defendants. *See* Appendix A. Because of the lack of a true overarching conspiracy, or even any conspiracy between any two unmarried defendants named in the Indictment, it is impracticable to "group" any defendants together for trial, because the evidence against each defendant will be unique and specific to each defendant.

## Volume of Discovery and Timing of the Trials

To date, the government has produced an enormous volume of discovery, due in large part to its decision to allege an overarching conspiracy involving all fifteen defendants. The most recent discovery production by the government (Volume 13) sent on January 30, 2020, consisted of 44,629 pages (18,930 total documents). That brought the government's total production to date to over 1.9 million documents, consisting of over 3.2 million pages of material. These productions include 336 hours of audio/video content. The government's productions have been as follows:

| Production Volume | Docs | Pages |
|---|---|---|
| 20190517_USAO002 | 201 | N\A |
| VB_DISCOVERY001-01 | 27,754 | 167,098 |
| VB_DISCOVERY001-02 | 706,502 | 1,568,321 |
| VB_DISCOVERY001-03 | 25,098 | 52,047 |
| VB_DISCOVERY001-04 | 1,035,341 | 1,104,659 |
| VB_DISCOVERY003 | 43,625 | 189,217 |
| VB_DISCOVERY004 | 38,759 | 67,937 |
| VB_DISCOVERY006 | 15 | N/A |
| VB_DISCOVERY007 | 9,052 | 37,365 |
| VB_DISCOVERY008 | 216 | N/A |
| VB_DISCOVERY009 | 876 | 3,005 |
| VB_DISCOVERY010 | 52 | N/A |
| VB-RECORDS011 | 6,064 | 34,232 |
| VB_DISCOVERY012 | 1 | N/A |
| VB-DISCOVERY013 | 18,930 | 44,629 |
| **Total:** | **1,912,486** | **3,268,794*** |

The discovery includes over 4,000 audios and associated transcripts (approximately 336 hours of audio recordings).

The government continues to produce additional discovery on a rolling basis. In addition, the parties continue to negotiate and seek the Court's guidance regarding the disclosure of additional exculpatory evidence. Pending before the Court are a series of motions to compel. *See* ECF Nos. 648, 681, 691, 693, 696, 699. Briefing and resolution of those motions has been delayed due to the government's belated disclosure of material and exculpatory evidence. *See* ECF. No. 807 Ex. 1. The Magistrate Judge has yet to schedule a hearing date to address the motions to compel, and acknowledged that additional motions to compel may be forthcoming. *See* Clerk's Note on Interim Status Conf. ECF. No. 744. Some defendants, including Mrs. Kimmel, continue to negotiate with the government over such disclosures. The Court has set a March 13, 2020, deadline for remaining discovery motions. After the resolution of such motions, there may be further delay in the

completion of discovery if the government is ordered to comply with such motions and produce additional discovery.

Based on this massive volume of discovery and the government's ongoing production, along with continued correspondence and motion practice regarding the government's compliance with its obligation to disclose exculpatory evidence, Mrs. Kimmel respectfully suggests that it is premature to group the defendants. Substantively, the defendants lack the requisite information to understand fully the scope of the government's case against each defendant, and will continue to lack that information for at least several months. Moreover, the state of discovery renders an October 2020 trial date unfeasible. Mrs. Kimmel proposes that the first trial begin in February 2021, to permit the defendants to review the entirety of the government's production in advance of trial.

Mrs. Kimmel's Proposed Trial Groupings and Schedule

For the purpose of responding to the Court's order, despite the prematurity of this grouping exercise, and without waiving any rights to request dismissal or severance in other forms or on other grounds, Mrs. Kimmel proposes that the most logical approach at this juncture, in the absence of complete discovery or resolution of relevant discovery motions and Rule 12(b) motions, is grouping the defendants by the type of conduct alleged in the Indictment. This will serve the interest of judicial economy and endeavor to lessen prejudicial spillover that would results in a joint trial, in which evidence admitted against one defendant risks being improperly used by the jury against another.

The Indictment alleges that Singer used two entities—"The Key" and "KWF"—to conduct three distinct sorts of illegal business through three distinct sets of intermediaries. Indictment ¶¶ 19, 20, 30. First, the Indictment alleges that six of the fifteen defendants paid Singer to

fraudulently obtain standardized test scores, either by bribing the exam administrator or by arranging for one of his associates to pose as an exam proctor so he could secretly provide students with answers during the exam or replace their answers with his own. *Id.* ¶¶ 45-54, 66(a)-(d). Second, the Indictment alleges that eleven of the defendants paid Singer and/or university coaches or administrators, in different amounts and in different ways, allegedly to facilitate their children's college admission through a "side door," i.e., by "[b]ribing athletic coaches and university administrators to designate students as purported athletic recruits … and as members of other favored admissions categories," or by "[f]abricating athletic 'profiles' containing falsified athletic credentials … to submit in support of the students' college applications." *Id.* ¶¶ 66(f), 66(g). Finally, the Indictment alleges that Singer had his employee and another individual take online courses posing as the child of another defendant. *Id.* ¶¶ 66(e), 253-271, 278.

Aside from Singer's involvement, the Indictment does not describe any overlap or interdependence between the three schemes. The alleged manner and means of the three operations were completely and self-evidently different. The only logical way to find any common themes across defendants is thus to group them based on which of Singer's schemes they are alleged to have participated in. This provides some organizing principle for these trials, to the extent one can be applied where the Indictment attempts to shoehorn many individual conspiracies into an omnibus one.

With this principle in mind, Mrs. Kimmel proposes the following groupings:

**Test-Taking Only Group**

| Defendant | Alleged Conduct |
|---|---|
| I-Hsin "Joey" Chen | Testing |
| Amy Colburn | Testing |
| Gregory Colburn | Testing |
| David Sidoo | Testing |

**Both Test-Taking and Donations Group**

| Defendant | Alleged Conduct |
|---|---|
| William McGlashan Jr. | Testing and USC donations |
| Marci Palatella | Testing and USC donations |

**Donations Group A**

| Defendant | Alleged Conduct |
|---|---|
| Gamal Abdelaziz | USC donations |
| Mossimo Giannulli | USC donations |
| Lori Loughlin | USC donations |
| John Wilson | USC donations |

**Donations Group B**

| Defendant | Alleged Conduct |
|---|---|
| Diane Blake | USC donations |
| Todd Blake | USC donations |
| Elisabeth Kimmel | Georgetown and USC donations |
| Homayoun Zadeh | USC donations |
| Robert Zangrillo | USC donations and Class-taking |

Mrs. Kimmel takes no position on which trial should occur first, but proposes that these trials occur in February 2021, early Spring 2021, and late Spring 2021, given the volume of discovery, the fact that discovery is not yet complete, and the pendency of discovery and Rule 12 motion practice.

Mrs. Kimmel's grouping proposal will serve judicial economy and minimize, to the extent possible, prejudicial spillover by limiting each trial as much as possible to the category of conduct the defendants in that trial are alleged to have participated in,[3] without requiring any individual

---

[3] The allegations with respect to each parent charged with utilizing Singer's services share a few features common to Singer's *modus operandi*, but are otherwise highly individualized, reflecting that each parent's alleged involvement with Singer was not coordinated with or known to any of the other parent defendants. For this reason, counsel for Mrs. Kimmel notes for the Court that the vast majority of evidence at trial, no matter how the defendants are grouped, is unlikely to be applicable to more than one defendant. Accordingly, frequent limiting instructions for the jury will be necessary in any permutation of groupings.

defendant to stand two separate trials for two separate categories of conduct. At a high level, the most substantial difference between schemes is the test-taking scheme and the donation scheme. Conducting separate trials for those defendants alleged to have participated in only one of these schemes reduces the risk of jury confusion and the need for limiting instructions regarding the admissibility of evidence that will be required in any joint trial of these defendants.

Two defendants (Mr. McGlashan and Ms. Palatella) are alleged to have engaged in both the testing and donation schemes, and Mrs. Kimmel proposes that those defendants have a trial of their own (Both Test-Taking and Donations Group). Incorporating these defendants into either of the other categories would be prejudicial to the other defendants with whom they are joined for trial, because it would introduce witnesses and evidence that have no bearing at all on those defendants' conduct or on the nature of the services they are alleged to have received from Singer. By placing the two defendants who are alleged to have engaged in both schemes together, those defendants will benefit from any shared evidence with respect to both schemes, to the extent there is any, without compromising the integrity of the trials of any other defendants.

The remaining two groups (Donations Group A and Donations Group B) present almost exclusively donation-related issues.

Counsel for Mrs. Kimmel respectfully submits that this proposal helps ensure that all defendants will receive fair trials, and that those trials will proceed efficiently, based on the information available to counsel at this time.

The Government's Trial Grouping Proposal

The government's proposal, in contrast, offers no organizing principle, no protections against the prejudicial spillover of evidence introduced against one defendant that has no bearing on another, and no judicial economies. The government's proposal presented the Court with a

"two-trial scenario" and a "three-trial scenario." Both scenarios ignore the distinctions between the three categories of activity alleged in the Indictment, mixing and matching defendants who not only had nothing to do with one another, but also worked with Singer on entirely different alleged objectives. Neither scenario presented by the government appears to consider the facts or evidence likely to be offered against the defendants or the impact of the groupings upon the proceedings.

In the government's two-trial scenario, the first trial would commence in October 2020 and the second trial would commence in early 2021. The government has proposed grouping the defendants as follows:

**Trial 1**

| Defendant | Alleged Conduct |
| --- | --- |
| Gamal Abdelaziz | USC donations |
| I-Hsin "Joey" Chen | Testing |
| Mossimo Giannulli and Lori Loughlin | USC donations |
| Elisabeth Kimmel | Georgetown and USC donations |
| William McGlashan Jr. | Testing and USC donations |
| Homayoun Zadeh | USC donations |

**Trial 2**

| Defendant | Alleged Conduct |
| --- | --- |
| Diane Blake and Todd Blake | USC donations |
| Amy Colburn and Gregory Colburn | Testing |
| Marci Palatella | Testing and USC donations |
| David Sidoo | Testing |
| John Wilson | USC donations |
| Robert Zangrillo | USC donations and class-taking |

In the government's alternative three-trial scenario, the first trial would commence in October 2020, the second trial would commence in early 2021, and the third trial would commence in the late spring of 2021. The government has proposed grouping the defendants as follows:

11

**Trial 1**

| Defendant | Alleged Conduct |
|---|---|
| I-Hsin "Joey" Chen | Testing |
| Mossimo Giannulli and Lori Loughlin | USC donations |
| Elisabeth Kimmel | Georgetown and USC donations |
| William McGlashan Jr. | Testing and USC donations |

**Trial 2**

| Defendant | Alleged Conduct |
|---|---|
| Gamal Abdelaziz | USC donations |
| Amy Colburn and Gregory Colburn | Testing |
| Marci Palatella | Testing and USC donations |
| Robert Zangrillo | USC donations and class-taking |

**Trial 3**

| Defendant | Alleged Conduct |
|---|---|
| Diane Blake and Todd Blake | USC donations |
| David Sidoo | Testing |
| John Wilson | USC donations |
| Homayoun Zadeh | USC donations |

Both of the government's trial grouping proposals fail to divide the defendants in any logical fashion or consider judicial economy. A look at just a few paragraphs from the Indictment reveals the disparate allegations levied against the defendants who are grouped together. For example, in the government's two-trial scenario, the first proposed trial group includes Mr. Zadeh, Mr. Chen, and others. With respect to Mr. Zadeh, the Indictment alleges that, beginning in 2016, "Zadeh agreed with Singer to pay an amount, ultimately totaling $100,000 to facilitate his daughter's admission to USC as a purported lacrosse recruit." Indictment ¶ 245. With respect to Mr. Chen, the Indictment alleges that, "in or about the spring of 2018, Chen agreed with Singer to pay $750,000 to have Riddell pose as a proctor for his son's ACT exam and secretly correct his

answers." *Id.* ¶ 135. The second proposed trial group includes the Colburns and the Blakes. With respect to the Colburns, the Indictment alleges that, in the fall of 2017, the Colburns "agreed with Singer to pay $25,000 to have Riddell pose as a proctor for their son's SAT exam and secretly correct his answers." *Id.* ¶ 97. With respect to the Blakes, the Indictment alleges that, beginning in or about 2017, the Blakes "agreed with Singer to pay an amount, ultimately totaling $250,000, to facilitate their daughter's admission to USC as a purported volleyball recruit." *Id.* ¶ 123.

In the two-trial scenario, the government has grouped together defendants who are alleged to have participated in completely different types of activities (donations vs. test-taking) at different time periods. The evidence needed for the government to prove its case against each of the defendants in each trial will have little to no overlap. In every trial, the government will need to produce evidence relating to both the donation category of alleged conspiratorial conduct and the test-taking category of alleged conspiratorial conduct, even though such evidence is irrelevant for some of the defendants in each proposed group. It is hard to imagine a less efficient way for the Court to preside over the trials in these matters.

This inefficient grouping of defendants pervades the government's proposed three-trial scenario as well. In the three-trial scenario, the first proposed trial includes Mr. Chen (test-taking), Mr. Giannulli and Ms. Loughlin (donations), and Mrs. Kimmel (donations). The second proposed trial group includes Mr. Abdelaziz (donations) and the Colburns (test-taking). The third proposed trial includes the Blakes (donations) and Mr. Sidoo (test-taking).

It is not clear why the government chose to group the defendants in the manner that it did. The only "rationale" offered by the government is that it "believes that these groupings, which contemplate that spouses who have been charged together are tried together, will facilitate the

efficient presentation of evidence based on the specific conduct in which each of the defendants engaged and the nature of the witnesses and evidence against them." *See* ECF No. 799 at 3.

The government's proposed trial groupings do not achieve the purported efficiencies or serve judicial economy. To the contrary, the government's proposal appears designed to maximize the spillover of prejudicial evidence and the resulting inefficiencies for the Court, counsel, and the jury, that would undoubtedly plague the proceedings regardless of the groupings. The defendants have not seen any evidentiary basis for these groupings in the government-produced materials they have reviewed thus far. Each proposed trial in both the two-trial scenario and the three-trial scenario would contain a full airing of all the issues relating to two discrete categories of activity—test-taking and donations. These categories do not share witnesses (except for Singer, whom the government has indicated may not testify) or other evidence. This is inefficient and will result in trials in which the Court will have to give constant direction and jurors will be required to conduct mental gymnastics to prevent prejudicial information about one defendant's conduct from spilling over into the evaluation of the facts involving another defendant accused of completely different acts, at a completely different time, through completely different people.

To address such prejudicial juror confusion in trials pursuant to the government's proposal, the Court would need to provide limiting instructions to the jury continually throughout each trial, likely with every witness and nearly every document introduced. The government's proposal thus presents a heightened need for judicial intervention in the presentation of evidence, which in turn increases the length and complexity of the trial, and a heightened risk of potential appellate issues in light of the complexity of the evidentiary rulings and limiting instructions needed.

Conclusion

Counsel for Mrs. Kimmel believes that it is premature to group the defendants for trial in light of outstanding discovery and motion practice, which will further crystallize the issues for trial and provide clarity on appropriate groupings of defendants who, across the board, are utterly unconnected to one another. As an interim measure, based on the information available at this juncture, the groupings proposed herein will facilitate the efficient presentation of evidence based on the specific conduct in which each of the defendants is alleged to have engaged, and the nature of the witnesses and evidence against them. In so doing, these groupings bear a lower risk of prejudicial spillover and offer greater judicial economy than the groupings proposed by the government.

Dated: February 12, 2020

Respectfully submitted,

/s/ *R. Robert Popeo*
Cory S. Flashner (BBO # 629205)
R. Robert Popeo (BBO # 403360)
Mark E. Robinson (BBO # 423080)
Eóin P. Beirne (BBO # 660885)
MINTZ, LEVIN, COHN, FERRIS, GLOVSKY AND POPEO, P.C.
One Financial Center
Boston, MA 02111
(617) 348-1605 (telephone)
(617) 542-2241 (fax)
csflashner@mintz.com
rpopeo@mintz.com
mrobinson@mintz.com
ebeirne@mintz.com

**Counsel for Elisabeth Kimmel**

**CERTIFICATE OF SERVICE**

    I, Cory S. Flashner, counsel for the Defendant, hereby certify that this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the NEF, and paper copies will be sent to those indicated as non-registered participants on February 12, 2020.

                                                           /s/ *Cory S. Flashner*
                                                           Cory S. Flashner (BBO # 629205)

Charges in the Fourth Superseding Indictment

| Count/Defendant | I (Fraud) | II Conspiracy (Fed. Pr. Bribery) | III (Money Laundering) | IV | V | VI | VII | VIII | IV | X | XI | XII | XII |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | Fraud (Aiding & Abetting) | | | | | | | Federal Programs Bribery (Aiding & Abetting) | | Filing a False Tax Return |
| Sidoo | x | | x | | | | | | | | | | |
| G. Colburn | x | | x | | | | | | | | | | |
| A. Colburn | x | | x | | | | | | | | | | |
| Abdelaziz | x | x | x | | | | | | | | | | |
| T. Blake | x | x | x | | | | | | | | | | |
| D. Blake | x | x | x | | | | | | | | | | |
| Chen | x | | x | | x | | | | | | | | |
| Giannulli | x | x | x | | | | | | | | | | |
| Loughlin | x | x | x | | | | | | | | | | |
| Kimmel | x | x | x | | | | | | | | | | |
| McGlashan | x | x | x | | | | x | | | | | | |
| Palatella | x | x | x | | | | | | | | | | |
| Wilson | x | x | x | | | x | | x | x | | x | x | x |
| Zadeh | x | x | x | | | | | | | x | | | |
| Zangrillo | x | x | x | x | | | | | | | | | |

96736933v.2

17