# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| UNITED STATES OF AMERICA | ) |
|  | ) |
| v. | ) Case No. 1:19-CR-10080-NMG |
|  | ) |
| DAVID SIDOO, *et al.*, | ) |
|  | ) |
| Defendants. | ) |

## MICHELLE JANAVS' REPLY TO GOVERNMENT'S OPPOSITION TO MOTION TO MODIFY SENTENCE

Leave to file granted on April 29, 2020 [Dkt. 1120]

**I.      INTRODUCTION**

The government's argument that a defendant not yet in custody is precluded from exhausting her administrative remedies and therefore may not seek a sentencing modification from this Court is contrary to the plain language of 18 U.S.C. § 3582(c)(1)(A)(i) and unsupported by a single case.  The statute itself does not contain a custody requirement because Congress did not intend to impose one.  Ms. Janavs fulfilled the statutory requirement that she first ask BOP to file a section 3582(c)(1)(A) motion on her behalf before filing one herself by sending a written request to the warden of the prison to which she has been designated.  It would serve no statutory purpose to hold that she must surrender and make the request a second time before the Court can rule on her motion – especially since surrendering would expose her to the very risk that her motion is intended to forestall.

Although the government minimizes how dangerous the virus has made BOP, it does not claim that the BOP has the COVID-19 pandemic under control, or that it will soon.  Nor does it contest that Ms. Janavs suffers from an underlying health condition that greatly increases her risk of serious illness or death if she contracts COVID-19.   These circumstances constitute "extraordinary and compelling" reasons to modify her sentence.

**II.     ARGUMENT**

      **A.      Ms. Janavs Has Exhausted Her Administrative Remedies.**

The government's argument that only a defendant who is incarcerated may file a section 3582(c)(1)(A) motion ignores the statute's plain language.  The statute says that "the defendant" may file a motion for a sentence reduction and specifies two grounds for relief.  The first, which appears in 18 U.S.C. § 3582(c)(1)(A)(i), authorizes "the defendant" to seek relief if "extraordinary and compelling reasons warrant such a reduction."  This is the one on which Ms. Janavs relies.  The second, in contrast, which appears in section 3582(c)(1)(A)(ii), authorizes

"the defendant" to seek relief only if "the defendant is at least 70 years of age [and] has served at least 30 years in prison . . . for the offense or offenses *for which the defendant is currently imprisoned*." (emphasis added).

The contrast between these provisions shows that Congress knew how to limit relief to defendants who are "currently imprisoned" and did so expressly when it wanted to. That Congress *did not* expressly limit relief under section 3582(c)(1)(A)(i) to defendants who are "currently imprisoned" must be regarded as a conscious policy choice. *See Gozlon-Peretz v. United States*, 498 U.S. 395, 404 (1991) ( "'[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion'") (*quoting Russello v. United States*, 464 U.S. 16, 23 (1983) (internal quotation marks omitted)). The government ignores this portion of the statute and focuses instead on the requirement that in order to exhaust administrative remedies, a request for a reduction in sentence must be directed to the "warden of the defendant's facility." Dkt. No. 1114 at 9. Citing no authority, the government states that although Ms. Janavs has been designated to FPC Bryan, that facility is not her "facility" until she physically shows up there. *Id*. In essence, even though section 3582(c)(1)(A)(i) lacks an incarceration requirement, the government's position is that a defendant may not seek a sentencing modification under that provision unless she is physically incarcerated. No Court has ever reached that conclusion.

Lacking plain language in the statute to support its position, the government argues – unpersuasively – that the Court lacks authority to grant Ms. Janavs' motion because of a single word in the title of Section 604(b) of the First Step Act. Section 604(b) of the First Step Act amended 18 U.S.C. § 3582(c)(1)(A) to permit defendants (as opposed to only wardens) to file motions for a reduced sentence. Section 604(b) was titled, "INCREASING THE USE AND

2

TRANSPARENCY OF COMPASSIONATE RELEASE," and the government argues that the word "release" in the title of the amending provision means that only defendants who are incarcerated can file a section 3582(c)(1)(A)(i) motion, even though section 3582(c)(1)(A)(i) itself does not expressly say that. The government is wrong. It is hornbook law that "the title of a statute and the heading of a section cannot limit the plain meaning of the text." *Brotherhood of R.R. Trainmen v. Baltimore & Ohio Railway Co.*, 331 U.S. 519, 528-29 (1947). Likewise, "the title of a statute has no power to give what the text of the statute takes away." *Demore v. Kim*, 538 U.S. 510, 535 (2003) (O'Connor, J., concurring in part).

The government next falls back on even weaker ground: a BOP regulation that states, "Under 18 U.S.C. 3582(c)(1)(A), a sentencing court, on motion of the Director of the Bureau of Prisons, may reduce the term of imprisonment of an inmate." 28 C.F.R. § 571.60. The government argues that because BOP used the word "inmate" in this regulation, an incarceration requirement should be read into section 3582(c)(1)(A), even though Congress did not see fit to write one. That argument should likewise be rejected. For one thing, the BOP regulation in question dates back to 1994. S*ee* 59 FR 1238 (Jan. 7, 1994). That is more than 25 years before Congress amended section 3582(c)(1)(A) to permit "the defendant" to seek a sentence reduction without expressly requiring that the defendant be incarcerated when he or she does so. For another thing, the regulation reflects only BOP's interpretation of what a court may do "on motion of the Director of the Bureau of Prisons;" it does not purport to interpret what a court may do on a defendant's own motion.

To be sure, section 3582(c)(1)(A) includes an exhaust-or-wait requirement: a section 3583(c)(1)(A) motion may be filed only after "the defendant" has either "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf," or after 30 days has elapsed "from the receipt of such a request by the

3

warden of the defendant's facility, whichever is earlier." As noted in our opening brief, however, both things have occurred here. On March 23, 2020, Ms. Janavs sent a written request to the warden of the facility to which she has been designated to file a section 3582(c)(1)(A)(i) on her behalf. On April 1, 2020, BOP Regional Counsel Jason Sickler responded that BOP would not file the motion. Ms. Janavs then waited 30 days from BOP's receipt of her original request before filing her 3582(c)(1)(A)(i) on her own behalf. She therefore exhausted her administrative remedies *and* waited 30 days before filing, even though only one of those measures was required. The government has not identified any other steps she could have taken. The chief goal of the administrative exhaustion and waiting requirements – to permit the agency to make a decision on the sentence-reduction request in the first instance – has therefore been vindicated.

Even if Ms. Janavs had not both exhausted her administrative remedies *and* waited 30 days before filing, this Court could excuse both requirements. As the government acknowledges, the First Circuit has never held that section 3582(c)(1)(A)'s exhaustion requirement is jurisdictional, and this Court should join the many others that have held it is not. The Supreme Court has adopted a "bright line" test for when to classify statutory restrictions as jurisdictional. *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 516 (2006). A rule qualifies as jurisdictional only if "Congress has clearly stated that the rule is jurisdictional." *Sebelius v. Auburn Reg'l Med. Ctr.*, 568 U.S. 145, 153 (2013). "[A]bsent such a clear statement," the Supreme Court has cautioned, "courts should treat the restriction as nonjurisdictional in character," with the specific goal of "ward[ing] off profligate use of the term 'jurisdiction.'" *Id.* Here, the government has not identified a clear statement by Congress that section 3582(c)(1)(A)'s exhaustion rule is jurisdictional, because there isn't one. Section 3582(c)(1)(A) "does not speak in jurisdictional

terms or refer in any way to the jurisdiction of the [federal] courts." *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 394 (1982) (construing Title VII's exhaustion requirement).

Instead, section 3582(c)(1)(A)'s exhaustion requirement is properly viewed as a claims-processing rule, i.e. a rule that seeks "to promote the orderly progress of litigation by requiring that the parties take certain procedural steps at certain specified times." *Henderson v. Shinseki*, 562 U.S. 428, 435 (2011). Such rules can be waived, as the government acknowledges, and the Supreme Court has "reserved whether mandatory claim-processing rules may be subject to equitable exceptions" as well. *Hamer v. Neighborhood Hous. Servs. of Chicago*, 138 S. Ct. 13, 18 n.3 (2017).

Many courts have held that "Congress cannot have intended the 30-day waiting period of § 3582(c)(1)(A) to rigidly apply in the highly unusual situation in which the nation finds itself today," *United States v. Haney*, No. 19-CR-541 (JSR), 2020 WL 1821988, at *3 (S.D.N.Y. Apr. 13, 2020). This Court should hold the same. That Congress authorized a defendant to file a section 3582(c)(1)(A) motion only 30 days after requesting that BOP file one indicates that Congress valued a defendant's right to prompt judicial determination of her request over BOP's ability to grant or deny the request in the first instance. *See id.* Under current circumstances, where BOP officials are consumed with dealing with the crisis, the equitable grounds for excusing exhaustion and facilitating prompt judicial review are self-evident.

### B. The Government Does Not Contend that the BOP's Plan to Control the Spread of COVID-19 is Effective, or Will Become Effective Any Time Soon.

The government copies verbatim into its brief BOP's multi-phase plan to deal with the COVID-19 pandemic, but it does not argue that that plan is effective. At most, the government contends that BOP is taking "meaningful steps to address the risk" Dkt. No.1114 at 8.

Those steps are not working. In the seven days since Ms. Janavs filed her opening brief, the BOP has reported that 968 additional prisoners have been infected by COVID-19, and seven

5

more have died from the disease.[1] The rate of infection and death appears to have significantly increased, and because BOP is not routinely testing prisoners, these numbers surely under-count the actual number of positive cases. As the BOP recently acknowledged, it has given up on testing in facilities that are already experiencing "sustained transmission," choosing instead to simply assume that everyone is infected.[2]

| Date | Number of Positive Inmates | Number of Positive Staff | Number of Inmate Deaths | Total BOP Cases |
|---|---|---|---|---|
| 4/22/2020 | 566 | 342 | 24 | 908 |
| 4/23/2020 | 620 | 357 | 24 | 977 |
| 4/24/2020 | 649 | 336 | 25 | 985 |
| 4/25/2020 | 730 | 317 | 26 | 1047 |
| 4/26/2020 | 799 | 319 | 27 | 1118 |
| 4/27/2020 | 1046 | 330 | 28 | 1376 |
| 4/28/2020 | 1314 | 335 | 30 | 1649 |
| 4/29/2020 | 1534 | 343 | 31 | 1877 |

The government also points out that no staff or prisoners at FPC Bryan – the facility where Ms. Janavs is designated -- have tested positive for COVID-19. Dkt. No. 1114 at 16. But *it does not say whether anyone in that facility has been tested at all*, and there is reason to doubt it. Just this morning, an officer at FPC Bryan confirmed that inmates are not tested when they come to the camp if they are not showing symptoms consistent with COVID-19. Declaration of Gerloni Cotton at ¶ 3. Instead, incoming inmates are quarantined for 14 days and then released to the general population, where they are housed four inmates to a room in bunk beds spaced less than six feet apart. *Id.* Inmates eat in communal spaces, also with no arrangements to space them six feet apart.

---

[1] https://www.bop.gov/coronavirus/index.jsp
[2] Nicholas Chrastil, Louisiana Federal Prison No Longer Testing Symptomatic Inmates for Coronavirus Due To 'Sustained Transmission,' The Lens (Mar. 31, 2020), https://thelensnola.org/2020/03/31/louisiana-federal-prison-no-longer-testing-symptomatic-inmates-for-coronavirus-due-to-sustained-transmission/

*Id*. Staff isn't tested either if they are not showing symptoms. *Id*. at ¶ 4. And Bryan does not have 24-hour emergency care. *Id*. at ¶ 5.

In sum, the lack of reported positive tests at FPC Bryan does not mean there are no infected inmates or staff there. *See United States v. Asaro*, No. 17-CR-127 (ARR), 2020 WL 1899221, at *6 (E.D.N.Y. Apr. 17, 2020) (granting sentencing modification for prisoner in BOP facility with no confirmed cases, stating "I cannot conclude that no cases are, in fact, present, without assurances that the BOP is routinely testing everyone within the facility."); *United States v. Esparza*, No. 07-CR-00294, 2020 WL 1696084, at *2 (D. Idaho April 7, 2020) (noting that testing inside prisons has been "scant except for people who self-report symptoms" and therefore "statistics about the number of infections already in BOP facilities are largely meaningless.").

      **C.**    **Ms. Janavs' Underlying Health Condition Makes Her Vulnerable to Serious Illness or Death if She is Exposed to COVID-19.**

The government does not contest that Ms. Janavs suffers from an underlying medical condition that renders her vulnerable to serious illness or death from COVID-19. *See* Dkt. No. 1114 at 16. But it notes that Ms. Janavs is in "good health" and that her physician indicated that she did not need to be on the medication she is currently taking for her condition. *Id*. These comments seem to misunderstand the nature of Ms. Janavs' condition. *Absent the threat of COVID-19*, and when managed appropriately, Ms. Janavs' condition does not pose an acute risk to her. And *absent the threat of COVID-19*, Ms. Janavs would have been able to discontinue her medication for a short period of time while in custody, so that she would not be dependent on the BOP to provide that medication for her. The rampant spread of COVID-19 in BOP facilities changed that. At the time of Ms. Janavs' sentencing there were no reported cases of COVID-19 in the BOP. Now there are more than 1800. As set forth in the motion and in her physician's letter, Ms. Janavs' health condition makes her particularly vulnerable to serious illness and death *if* she becomes infected with COVID-19. Indeed, according to the CDC, Ms. Janavs' underlying

7

health condition is one of the greatest risk factors for serious illness and death in people infected with COVID-19.  Dkt. No. 1098 at 7.

                                      Respectfully Submitted,

                                      MICHELLE JANAVS

                                      By her attorneys,

Dated:  April 29, 2020        /s/ *William Weinreb*

                                      William Weinreb (BBO #557826)
                                      Quinn Emanuel Urquhart & Sullivan, LLP
                                      111 Huntington Ave, Suite 520
                                      Boston, MA 02199
                                      Tel: (617) 712-7114
                                      billweinreb@quinnemanuel.com

                                      Thomas H. Bienert, Jr. *(pro hac vice)*
                                      John Littrell *(pro hac vice)*
                                      Bienert | Katzman PC
                                      903 Calle Amanecer, Suite 350
                                      San Clemente, CA 92673
                                      Tel: (949) 369-3700
                                      tbienert@bienertkatzman.com
                                      jlittrell@bienertkatzman.com

                                      Jonathan L. Kotlier (BBO #545491)
                                      Nutter, McClennen & Fish, LLP
                                      155 Seaport Boulevard
                                      Boston, MA 02210-2604
                                      Tel: 617-439-2000
                                      jkotlier@nutter.com

**CERTIFICATE OF SERVICE**

    I, William Weinreb, hereby certify that on April 29 2020, this document, filed through the CM/ECF system, will be sent electronically to all registered participants in this matter as identified on the Notice of Electronic Filing (NEF).

*/s/ William Weinreb*
William Weinreb
